(August 15, 1905.)

## JONES v. VANE.

[82 Pac. 110.]

JUDGMENT—RELIEF AGAINST IN EQUITY—DEMURRER—CAUSE OF ACTION.

1. *Held,* in this case that the complaint fails to state a cause of action sufficient to warrant the vacating and setting aside a judgment entered by the trial court or a modification of it.

(Syllabus by the court—Sullivan, J., dissenting.)

APPEAL from District Court of Kootenai County. Honorable Ralph T. Morgan, Judge.

Action to set aside and annul a judgment of the district court. Demurrer to complaint sustained. Affirmed.

R. L. Edmiston, William T. Birdsall, J. J. Guheen, Attorney General, and Edwin Snow, for Appellants.

The demurrer to the complaint was not well taken. The complaint states a perfect cause of action for relief in equity. The facts stated ‹ppeal, in this age, to equity. They invoke the maxim "Equity will not suffer a wrong without a remedy." The theory of equitable interference with judgments is that, from certain equitable circumstances of which a court of equity has cognizance, it is against conscience that the party should proceed. (Story's Equity Jurisprudence, secs. 875, 884.) There is no justice in permitting one party to obtain an undue advantage over another through the neglect or misconduct of that other's attorney. Courts of law are not to be used by parties in perfecting, through the forms of law, the ruin of a party who has employed a negligent or unworthy attorney. (*Sharp v. Mayor,* 19 How. Pr. 193.) That the plaintiff in this action would be justified in proceeding with his remedy against his attorney; but the rule is now settled, and it is a just rule and practice, for the court to relieve the client without reference to the responsibility of his lawyer. (And see *Bean v. Maher,* 1 Daly (N. Y.), 440; *Elston v. Shilling,* 7 Rob. (N. Y.) 74. For earlier cases, see *Neele v. Berryhill,* 4 How. Pr. 16; *King v. Harris,* 34 N. Y. 330; *Milleman v. Mayor,* 18 How. Pr. 543; *Jellinghaus v. New York Ins. Co.,* 5 Bosw. 678. For later cases, see *McCredy v. Woodcock,* 41 App. Dec. 526, 58 N. Y. Supp. 656. For holdings in other states, see *Taylor v. Pope,* 106 N. C. 267, 19 Am. St. Rep. 530, 11 S. E. 257; *Gwathney v. Savage,* 101 N. C. 103, 7 S. E. 661; *Searles v. Christiansen,* 5 S. Dak. 650, 60 N. W. 29; *O'Brien v. Leach,* 139 Cal. 220, 96 Am. St. Rep. 105, 72 Pac. 1004.) Within the code rule, as embodied in the Idaho statute, a party is precluded from applying to vacate the original judgment, after six months from its entry. (*Jellinghause v. New York Ins. Co.,* 5 Bosw. 678.) It will be seen by the complaint that appellant is the victim of a gross fraud, practiced by his own attorney, and that the attorney is irresponsible. The whole complaint shows that the damages cannot be computed. No case can be found and no book can be found in which the right to equitable relief is denied in such a case. "Fraud" is one of the words used in the code as a ground

for relief. (Idaho Rev. Stats., sec. 4229.) For grounds of demurrer to a complaint under the code, see Revised Statutes of Idaho, section 4174; Code of Civil Procedure, section 3205. It would not seem to be necessary to argue in this age that no grounds of demurrer exist save such as the code prescribes. The pleadings are arbitrarily prescribed and limited by the code. (Idaho Rev. Stats., secs. 4161, 4162; Idaho Rev. Stats., chapters 2-7.) The authority to demur to a complaint is entirely derived from, and wholly depends upon, sections 4161-4174. (*De Witt v. Swift,* 3 How. Pr. (N. Y.) 280.) "A demurrer is allowed only where the ground of objection appears upon the face of the complaint. Unless the objection so appears, it is no ground for a demurrer." (*Wilson v. Mayor etc.,* 15 How. Pr. (N. Y.) 500.) The last quotation only reflects the language of section 4174, Idaho statutes, which allows a demurrer to a complaint "when it appears on the face thereof." (*Struver v. Ocean Ins. Co.,* 16 How. Pr. (N. Y.) 422.) The defects for which a demurrer will lie are named in the statute, and none other can be reached by it. (Bliss on Code Pleading, 3d ed., sec. 404; *Marie v. Garrison,* 83 N. Y. 14; Pomeroy's Code Remedies, 3d ed., sec. 515, citing many authorities.) The order striking out the complaint in intervention was without authority of law and in effect an unwarranted exercise of judicial power. The state of Idaho intervened as prescribed in section 4111 of the statute. Consequently, the filing of its complaint made the state a party to the action precisely the same in all respects as if the state had been brought in by the original summons. The only power the court thereafter had was to treat the state of Idaho as a defendant; and the only rights the respondent had was to "answer or demur [to the complaint in intervention] as if it were an original complaint." (Rev. Stats., sec. 4111.) The state was not only a "proper," but was a "necessary," party in order to obtain a final determination of the controversy in the United States supreme court. (*Wheeling Bridge Case,* 54 U. S. 518, 14 L. ed. 249; *Willamette etc. v. Hatch,* 125 U. S. 17, 9 Sup. Ct. Rep. 811, 31 L. ed. 634.)

Charles L. Heitman, for Respondents.

It will be seen by an inspection of the complaint that it clearly appears therefrom that the matters and things in controversy in this action have been heretofore adjudicated in the same district court, in an action between the same parties, and that all of the issues raised by the complaint in this action were raised in said former action, or should have been raised therein. Respondents contend that the matter has been adjudicated and finally determined, and that the decision of the district court in the former action, which was affirmed in this court by the dismissal of appellant's appeal in said former action, is the settled law of this case. "A judgment is conclusive upon all questions involved in the action and upon which it depends, and upon matters which, under the issues, might have been litigated and decided in the case; and the presumption of law is, that all such issues were actually heard and decided." (*Parnell v. Hahn,* 61 Cal. 131; *McLennan v. McDonnell,* 78 Cal. 275, 20 Pac. 566; *Benson v. Shotwell,* 87 Cal. 49, 25 Pac. 249.) "The judgment of a competent court is conclusive in a subsequent action between the same parties for the same thing, although it be palpably erroneous." (*Wolverton v. Baker,* 86 Cal. 591, 25 Pac. 54; *Hardy v. Hardy,* 97 Cal. 125, 31 Pac. 906.) "It may be stated, as a general proposition, that a judgment is conclusive, not only as to the subject matter in controversy in the action upon which it is based, but also in all other actions involving the same question, and upon all matters involved in the issues which might have been litigated and decided in the case; the presumption being that all such issues were clearly made and decided." (*Crew v. Pratt,* 119 Cal. 149, 51 Pac. 38, citing the following authorities, to wit: Freeman on Judgments, sec. 523; *Lillis v. Emigrant Co.,* 95 Cal. 553, 30 Pac. 1108; *Howell v. Budd,* 91 *Cal.* 342, 27 Pac. 747; *Burris v. Kennedy,* 108 Cal. 338, 41 Pac. 458; *Estate of Hudson,* 63 Cal. 454, 457. The former judgment of a court having jurisdiction over the subject matter and the parties, is a bar to a second suit upon the same cause of action between the same

parties, or their privies, and is conclusive, not only upon every question involved therein and thereby determined, but also as to every other matter which the parties might have litigated in the case and which they might have had decided. (*Gray v. Dougherty,* 25 Cal. 266; *Wilson v. Buell,* 117 Ind. 315, 20 N. E. 231; *Parker v. Obenchain,* 140 Ind. 211, 39 N. E. 869; *People v. Holliday,* 93 Cal. 242, 27 Am. St. Rep. 186, 29 Pac. 54; 2 Ency. of Pl. & Pr. 373-381; *Case v. Beaurgard,* 101 U. S. 692, 25 L. ed. 1004; 9 Notes on United States Reports, 1016, citing cases.) Testimony cannot be introduced to show that a former judgment between the same parties upon the same subject matter was erroneous. (*Marshall v. Shafter,* 32 Cal. 178.) Rule applies even where jurisdiction of court is involved. (*Washington Bridge Co. v. Stewart,* 3 How. (U. S.) 413, 11 L. ed. 658; 4 Notes on United States Reports, 433.) "Where an appeal discloses that the same subject matter has been litigated between the same parties in a prior suit, and that in the said suit the plaintiff in this suit had set up the same equity which he claims by this appeal, the appeal was ordered to be dismissed." (*Barnett v. Kilbourne,* 3 Cal. 327.) "The dismissal of an appeal is in effect an affirmance of the judgment or order appealed from, unless the dismissal is expressly made without prejudice to another appeal." (Idaho Rev. Stats., sec. 4823.) "A dismissal of an appeal for failure to file transcript is a bar to another appeal, unless such dismissal is made without prejudice to a second appeal." (*Fahey v. Belcher,* 3 Idaho, 355, 32 Pac. 1135; Idaho Rev. Stats., sec. 4184, subd. 1.) "If the defendant omitted to set up a counterclaim in the cases mentioned in the first subdivision of the last section (4181), neither he nor his assignee can afterward maintain an action against the plaintiff therefor." (Idaho Rev. Stats., sec. 4185; *Stevens v. Savings & Loan Assn.,* 5 Idaho, 741, 51 Pac. 779, 986.) The contention of appellant that there was a defect of parties in said former action, even if well founded, is made too late, as the objection should have been made by demurrer to the complaint in the former action. (Idaho Rev. Stats., sec. 4174, subd. 4.) The statute authorizes intervention.

(Idaho Rev. Stats., sec. 4111.)    The statutes use the word
"person" only, and the respondents contend that this stat-
ute does not apply to the state, which is a sovereign power.
"The word 'person,' when used in a statute, does not include
the state." (*McBride v. Board of Commrs.*, 44 Fed. 18; *In
re Fox*, 52 N. Y. 535, 11 Am. Rep. 751; *United States v. Fox*,
94 U. S. 315, 24 L. ed. 192; *United States v. Railroad Co.*,
17 Wall. 328, 21 L. ed. 601; Alabama Certificates, vol. 12;
Opinions Attorneys General, 176, 277; Taxation of Railroads,
vol. 12; *Butler v. Merritt*, 113 Ga. 238, 38 S. E. 751; *Dollman
v. Moore*, 70 Miss. 267, 12 South. 23, 19 L. R. A. 222; *Whit-
taker v. County of Tuolumne*, 96 Cal. 100, 30 Pac. 1016;
*Brown v. Saul*, 4 Mart., N. S. 434, 16 Am. Dec. 175, note, 180;
*Carraby v. Morgan*, 5 Mart., N. S., 501.)    The interest which
entitles a person to intervene in a suit between other parties
must be in the matter in litigation, and of such a direct and
immediate character that the intervener will either gain or
lose by the direct legal operation and effect of judgment.
(*Isaacs v. Jones*, 121 Cal. 257, 53 Pac. 793, 1101; *Peachy
v. Witter*, 131 Cal. 316, 63 Pac. 468; *People v. Green*, I
Idaho, 239; *Horn v. Water Co.*, 13 Cal. 62, 73 Am.
Dec. 569; *Smith v. Gale*, 144 U. S. 509, 12 Sup. Ct.
Rep. 674, 36 L. ed. 521; Notes on California Reports, 578;
17 Am. & Eng. Ency. of Law, 2d ed., 185.)

SULLIVAN, J.—This action was brought to vacate a judg-
ment in favor of the respondents and against the appellant
Jones.    Said judgment was entered on the eleventh day of
May, 1903, and the said Jones was commanded to remove a
certain wharf in the Pend d'Oreille river.    The appellant
Jones will hereafter be referred to as Jones, and respondents
will be referred to as Vanes.

The dispute in this action relates to a pier or landing-place
within the navigable waters of the Pend d'Oreille river, which
is a navigable river deriving its waters from the mountains
of British Columbia and Montana.    As a navigable river it
flows through a part of the state of Idaho, into and across a
part of the state of Washington, thence via British Columbia

and the Columbia river to the Pacific Ocean. The shore end of the said pier and landing in dispute is at the point on the river bank between high and low water marks and on ground claimed by Jones to belong to the state of Idaho; that is, it is the bed of a navigable stream. The state of Idaho intervened in this action and by its complaint in intervention it asserts ownership to the bed of said river on which said pier stands. It also alleges the issuance of a license by the state to Jones in 1902, permitting said Jones to erect said pier. It is alleged that the whole of said pier is submerged at ordinary high water. The shore end of said pier abuts or is on a square or plaza for a street leading on the county road to the landing, which road, it is alleged, was platted and dedicated to the public by Vane's predecessor in interest, prior to Vanes' acquiring any interest in said land. It is also alleged that the dedication of that portion of the square and street below high-water mark covered land to which the dedicator has no title, as it is averred said title was in the state; the title to the upland was derived by Vanes' predecessors by patent from the United States, and the patent limited the number of acres granted, which were all above high-water mark. Jones, since 1889, had been engaged in steamboat navigation on said river in Idaho and Washington, carrying mails, passengers and general merchandise, and said pier is the Idaho terminal of his boats, and it is alleged that he built and owned said pier, and that he derived his right to build and maintain the same by permit from the United States, and by a license from the state of Idaho, upon the landing-place; all of which rights attached and were exercised many years before Vanes acquired any interest in the adjoining upland, and it is averred that Vanes never had any interest in the strip of land between high and low water marks or in the bed of said river. That said landing is connected with the public road, which existed prior to the government survey, and is recognized on said survey, which survey was long prior to the platting of said land by Vanes' predecessor. Jones duly appealed to this court from the judgment which this action is brought to vacate, and it is alleged that with-

out his knowledge, and for no fault of his, and for no cause whatever, except the fraud of his counsel, that said appeal was dismissed by this court, for not filing the printed record on appeal, and his counsel, keeping him in ignorance, afterward sought to reinstate said appeal, which application was denied; that as soon as Jones learned said facts without any laches, he sought, through other counsel, to obtain this court's permission to make another application, which application was denied by this court; that on account of said fraud of Jones' counsel, and the further fact that said counsel is entirely financially irresponsible, and Jones is without any other remedy and has been deprived, without fault on his part, of his day in court, he thereupon brought this suit. In his complaint, Jones avers alleged fatal errors in the ruling of the trial court in the original suit, to wit, the failure to find facts warranting the judgment; that defenses existed fatal to any possible recovery, and a discovery of those facts was made since said judgment; that the judgment is too indefinite and uncertain for enforcement; that it was contrary to the overwhelming weight of evidence and rules of law applicable thereto; that no lawful determination could be had in that action without the presence of other parties, and that the court was without jurisdiction to determine any of the questions involved in said action or of the parties having the sole right to assert an interest in the subject matter thereof.

The complaint also sets forth various federal questions involved in the controversy, to wit, that the subjects involved are of maritime jurisdiction, of which the state district court has no jurisdiction, and that said judgment is void; that all the rights claimed by Jones were exercised under the United States statutes, law and usages, and any decision denying such rights is a decision against the validity of the authority so exercised; that the decision, in so far as it assumes the right to interfere with the dominion of the United States over said pier, or of Jones' right therein derived from the United States, or decreeing to Vanes any rights therein, and in the land to which said pier is attached, is without jurisdiction, either as to persons or property, and that either said judg-

ment which this action seeks to vacate, or any decision against the vested rights claimed by Jones under the United States statutes thereof, in that it is against the validity of said statutes and dominion of the United States, and deprives Jones of his property without due process of law; denies to Congress the right to regulate commerce; denies to Jones the privileges and immunities guaranteed to citizens of the several states, and the equal protection of the law thereof, and denies to Congress the right to make needful rules and regulations respecting the territory or property belonging to the United States.

The prayer of the complaint is for an injunction restraining the enforcement of said judgment and to vacate the same, and to so far open the same as to permit Jones to come in and urge his proper defenses. The complaint is accompanied by the affidavit of Jones, who reaffirms the allegations of the complaint and avers that said judgment is necessarily an interference with a right of navigation of the navigable waters of the United States, and with foreign and domestic commerce, as well as with the proper handling of the United States mails, and avers that unless this court interferes in equity, he is without remedy. He therein seeks to explain and excuse his failure to allege in the answer in the former suit, any of the facts which are alleged in the complaint in this and avers that no final determination of the questions involved can be had unless he is relieved from said former judgment.

Jones' application for an injunction herein was also fortified by an affidavit of John W. Strack, a civil engineer, showing that he had verified the high-water and low-water marks of the river, as well as the road locations leading thereto, and that the whole territory in dispute is below high-water line, and within lands platted and dedicated to the public by Vanes' predecessor in interest. Said affidavit is corroborated by a map drawn by said civil engineer, showing the survey made by him. Upon filing the complaint, the district court granted a temporary injunction with an order to show cause why it should not be continued. Pending the motion to con-

tinue the injunction, the state of Idaho filed and served the complaint in intervention, alleging title to the land between high and low water marks of the Pend d'Oreille river. It further alleged that the state had granted a license to Jones to use said land for said pier and landing purposes. The Vanes demurred to the complaint upon two grounds. 1. That it failed to state facts sufficient to constitute a cause of action; and 2. That the action was barred by a former judgment involving the same subject matter. Vanes also made a motion to strike out the complaint in intervention filed by the state. On the hearing of the order to show cause for a continuance of the injunction, the Vanes interposed said demurrer and motion, and nothing else, and the only questions discussed at the hearing were the questions raised by them. The court sustained the motion to strike out the complaint in intervention on behalf of the state, sustained the demurrer to the complaint, awarded judgment dismissing the action, and for costs. From those orders and that judgment, Jones and the state of Idaho appealed.

The writer of this opinion is of the view that the court erred in sustaining the demurrer to the complaint. As I view it, the complaint states a perfect cause of action for relief in equity. The court also erred in striking out the complaint in intervention of the state. There is no question in my mind but that a court of equity may restrain a judgment at law upon proper allegations. The principle is stated in section 875, Story's Equity Jurisprudence, as follows: "The theory of equitable interference with judgment is that from certain equitable circumstances, of which a court of equity has cognizance, it is against conscience that the party should proceed." And in section 884 it is stated: "There is no pretense to assert the jurisdiction upon any of the ordinary grounds of accident, mistake, fraud or confidence. It stands upon the more enlarged principle of general justice "

In *People v. Mayor etc.*, 11 Abb. Pr. 66, where the court had under consideration the question as to whether a court of equity would interfere with a judgment at law in cases only where the insolvency of the attorney is shown, it is stated:

"The rule confining relief to the client only to cases of the insolvency of the attorney, has nearly, if not entirely, become obsolete, and the rule adopted to give relief to the party where the act was unauthorized. In *Sharpe v. Mayor etc.,* Justice Mullin says: 'The recent and, in my opinion, the more just practice is for the court to relieve the client, without reference to the responsibility of the attorney, where a proper case for granting relief is established. Theie is no justice in permitting one party to obtain an undue advantage over another through the neglect or misconduct of that other's attorney. Courts of law are not to be used by parties in perfecting, through the forms of law, the ruin of a party who has employed a negligent or unworthy attorney.' " (See *Ramsey v. Erie R. R. Co.,* 45 N. Y. 637; *Little Rock etc. Co. v. Wells,* 61 Ark. 354, 54 Am. St. Rep. 216, 33 S. W. 208, 30 L. R. A. 560.) In footnote at page 221 (54 Am. St. Rep.), it is stated: "In every case in which application is made to a court of equity by an independent suit for relief against a judgment or other decision, it is incumbent on the complainant to establish: 1. That he has lost a cause of action or of defense, or some part thereof; 2. That such loss occurred either because the court in the former proceedings or action was not competent to hear it and to grant reiief thereupon, or because he was prevented from presenting it or having it properly considered, either through fraud, accident, mistake or some other sufficient ground for the interposition of equity; and 3. That unless he secures relief in equity, he will be without any adequate remedy. (*Headley v. Bell,* 84 Ala. 346 [4 South. 397]; *Harding v. Hawkins,* 141 Ill. 572, 33 Am. St. Rep. 347 [31 N. E. 307]; *Ratliff v. Stretch,* 130 Ind. 282 [30 N. E. 30]; *Whittaker v. Wickersham,* 5 Del. Ch. 187; *Luinger v. Glenn,* 33 Neb. 187 [49 N. W. 1128]; *Prockter v. Pettit,* 25 Neb. 96 [41 N. W. 131]; *Phillips v. Pullen,* 45 N. J. Eq. 5 [16 Atl. 9]; *Yorke v. Yorke,* 3 N. Dak. 343 [55 N. W. 1095].)"

I think the doctrine is well settled that a court of equity will interfere upon proper application and stay the enforcement of a judgment where it appears from the allegations of

the complaint that the trial court had no jurisdiction to enter the judgment. Especially is that true where it is shown that the attorney of the party against whom the judgment is entered has clearly betrayed his client. However, my associates are of the opinion that the allegations of the complaint are not sufficient to warrant a court of equity in interfering with the judgment sought to be set aside or annulled by this action; therefore the majority of the court holds that the judgment of the trial court must be affirmed.

AILSHIE. J.—I have no fault to find with the principles of equity suggested by Justice Sullivan, but I am unable to see wherein appellant has made such allegations of fraud as to justify a court of equity in assuming jurisdiction and enjoining the enforcement of a judgment at law duly made and entered.

The appellant has had his day in court, and the judgment entered against him has become final and is the law in all subsequent proceedings between the same parties in reference to the same subject matter. I think the complaint destitute of such allegations of fraud as to warrant equitable interference. Equity should not override the law, but assist and supplement it. The judgment of the trial court will be affirmed. Costs awarded to the respondents.

Stockslager, C. J., concurs.